UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RAMON ALMONTE,<br>    Plaintiff, | CIVIL NO. 3:18-cv-244 (KAD) |
| v. | |
| | January 22, 2019 |
| NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br>    Defendant. | |

**MEMORANDUM OF DECISION**
**RE: PLAINTIFF'S MOTION TO REVERSE OR REMAND [ECF NO. 17] AND**
**DEFENDANT'S MOTION TO AFFIRM [ECF NO. 18]**

**Preliminary Statement**

The Plaintiff, Ramon Almonte, brings this appeal pursuant to 42 U.S.C. §405(g). He appeals the Defendant Commissioner's decision denying his disability insurance benefits under Title II of the Social Security Act (hereinafter "the Act") and denying him Supplemental Security Income (SSI) under Title XVI of the Act, based upon a finding that he is not "disabled" under the Act. He seeks an order of this Court reversing the Commissioner's decision on the ground that the Commissioner's findings are not supported by substantial evidence in the record. Alternatively, he seeks a remand to the Commissioner for further proceedings on the ground that he did not receive a full and fair hearing before the ALJ. The Commissioner, on the other hand, avers that the Commissioner's findings are supported by substantial evidence in the record and were made following a full and fair hearing. She asks this Court to affirm the decision.

For the reasons set forth below, the Plaintiff's motion is DENIED. The Defendant Commissioner's motion is GRANTED.

1

**Standard of Review**

The Plaintiff sought a determination that he was disabled as of November 22, 2012, the purported date of onset,[1] through the date of the hearing on his application. A person is "disabled" under the Act if that person is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(a). A physical or mental impairment is one that "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). In addition, a claimant must establish that his "physical or mental impairment or impairments are of such severity that [he] is not only unable to do [his] previous work but cannot, considering [his] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to which an ALJ must adhere when evaluating disability claims. *See* 20 C.F.R. 404.1520. In brief, the five steps are as follows: (1) the Commissioner determines whether the claimant is currently engaged in substantial gainful activity; (2) if not,[2] the Commissioner determines whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if such a "severe impairment" is established, the Commissioner next determines whether the medical evidence establishes that the claimant's impairment "meets or equals" an impairment listed in Appendix 1 of the regulations; (4) if the claimant does not establish the "meets or equals"

---
[1] This date corresponds to the date upon which the Plaintiff withdrew a prior application for benefits.
[2] If the claimant is engaged in substantial gainful activity, the claimant is not disabled under the Act and no further analysis is required. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

requirement, the Commissioner must then determine the claimant's residual functional capacity (hereinafter "RFC") to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner must next determine whether there is other work in the national economy which the claimant can perform. 20 C.F.R. 404.1520(a)(4)(i)-(v). The claimant bears the burden of proof with respect to steps one through four. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). The Commissioner bears the burden as to step five, that is, finding the existence of work in the national economy that the claimant is capable of performing. *McIntyre v Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

It is well-settled that the district court will reverse an ALJ's decision only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See Beauvoir v. Chater,* 104 F.3d 1432, 1433 (2d Cir. 1997); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue,* 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

The Court does not inquire as to whether the record might also support the Plaintiff's claims, but only whether there is substantial evidence to support the Commissioner's decision. *See Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) ("If there is substantial evidence to support the [agency's] determination, it must be upheld"); *Talavera*, 697 F.3d at 151 (limiting review to "determining whether the SSA's conclusions were supported by substantial evidence"); *Bonet ex rel. T.B. v. Colvin,* 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting [the Plaintiff's] view is not the question here; we must decide whether substantial evidence supports *the ALJ's decision*") (emphasis in original). "Even where the administrative

3

record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quoting *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)). Once an ALJ finds facts, the Court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault v. Social Sec. Admin.*, 683 F.3d 443, 448 (2d Cir. 2012).

**The ALJ's Decision**

At step one, the ALJ determined that the Plaintiff had not been engaged in substantial gainful activity since the claimed onset date, November 22, 2012. At step two, the ALJ found that the Plaintiff had severe impairments, specifically, lumbar spine degenerative disc disease with hypertrophic changes at L5-S1, status-post cervical spine fusion surgery associated with neck pain, and obesity. At step three, the ALJ found that the Plaintiff did not establish an impairment or combination of impairments that meets or medically equals the severity of the listed impairments in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1. At step four, the ALJ determined that the Plaintiff had an RFC to perform "light work" as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The ALJ placed limitations on this determination, however, finding that the plaintiff was limited to frequent climbing of ramps or stairs; occasional climbing of ladder, ropes, or scaffolds; frequent balancing, stooping kneeling, and crouching; and occasional crawling. As a result, the ALJ determined that the Plaintiff could not perform past relevant work.[3] At step five, crediting the testimony of the vocational expert, the ALJ determined that there are a significant number of jobs in the national economy that the Plaintiff could perform even with the limitations

---

[3] The Plaintiff had last worked as a truck driver, a position that required extensive lifting and moving of heavy items.

4

identified above. The ALJ therefore concluded that the Plaintiff was not disabled as of November 22, 2012, or at any time thereafter through the date of the hearing.

At issue in this appeal is the Commissioner's determination of the Plaintiff's RFC, specifically the finding that he is able to perform light work subject to the stated limitations. In reaching this decision, the ALJ did not fully accept the Plaintiff's testimony regarding the intensity, persistence, and limiting effect of his lower back and neck pain. The ALJ also gave little weight to the opinion statement submitted by the Plaintiff's chiropractor, Dr. Kaczanowski. The Plaintiff argues that the ALJ erred in her assessment of the evidence, erred in not giving greater credit to the Plaintiff's testimony, and erred in giving little weight to Dr. Kaczanowski's opinion. Accordingly, the Plaintiff avers that the RFC was wrong and that the finding of "not disabled" must be reversed.

**Discussion**

*The Plaintiff's Testimony*

The Plaintiff essentially testified that his lower back and neck pain is completely debilitating. Specifically, he testified that he is "always at home" and that he doesn't go out much. He relies upon his sister and his mother to clean his home, where he lives alone. He does not cook, instead depending upon relatives to bring him food. His average day includes staying in bed late, taking his pills, and then lying down in various positions throughout the day to try to alleviate his pain. He described his back pain as a constant eight on a scale of one to ten. His pain is exacerbated when he sits for more than a few minutes or stands up. He does not walk very much because it hurts too much. He balances himself against the sink or counter if he has to stand. He testified that, on some days, the pain is so bad he does not get out of bed at all; this happens three to four times per week. With respect to his neck pain, he described a constant five or six on the one to ten

pain scale. He stated he cannot turn his head or look down without exacerbating the pain. Reading a book or even looking at his plate during a meal causes neck pain.

The evaluation of a claimant's subjective complaints is within the sole province of the ALJ as the trier of fact. *Barbuto v. Colvin,* 2014 WL 3572412 at *5 (W.D.N.Y. July 21, 2014). The ALJ is not required to accept the Plaintiff's "subjective complaints without question; [s]he may exercise discretion in weighing the credibility of the [Plaintiff's] testimony in light of the other evidence of record." *Genier*, 606 F.3d at 49. The ALJ's determination is entitled to "great deference and therefore can be reversed only if [it is] patently unreasonable." *Piertrunti v. Dir., Office of Workers' Comp. Programs,* 119 F.3d 1035, 1042 (2d Cir. 1997); *see also Selian,* 708 F.3d at 420. The ALJ should consider whether the claimant's testimony is consistent with the medical records submitted. 20 C.F.R. §404.1529(c)(2), 416.929(c)(2). Indeed, claimants are advised that "[o]bjective medical evidence is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work." *Id*.

The ALJ determined that the Plaintiff's description was not entirely consistent with the whole record and therefore did not fully credit his claim that his pain rendered him unable to perform any work-related activities such that he was disabled. In so doing, she cited several specific examples within the record.[4] Among those items was a treatment note which indicated that the Plaintiff exacerbated his neck injury while he was changing a spark plug. The Plaintiff first avers that the ALJ misread or misunderstood this evidence. The treatment note states: "[W]hile changing a spark plug, [the Plaintiff] felt a 'pop' in his neck and his pain got somewhat worse." The Plaintiff contends that this treatment note cannot support a conclusion that the

---

[4] It is worth noting at the outset that the ALJ made clear that she was relying upon the entire record before her. Her findings were not limited to the portions of the record specifically cited in her decision.

Plaintiff can perform work-related activities, because, he argues, it establishes that doing so actually causes injury. However, the Plaintiff's interpretation of the evidence is not the only available interpretation. The treatment note is evidence that the Plaintiff was, during the relevant time period, undertaking tasks such as changing a spark plug, which is inconsistent with his testimony regarding his limitations.

The Plaintiff also challenges the ALJ's reliance on and the accuracy of Dr. Hemerle's note from January 20, 2011, which stated that the Plaintiff "is working at his regular duties," which was inaccurate at the time it was written. This treatment note related to the Plaintiff's knee surgery, his workers compensation status, and his recovery almost two years before the purported onset of disability due to his neck and back injury. While the decision to specifically cite to this medical record is puzzling, given the date and the largely non-probative nature of the entry[5], it is a small portion of the record reviewed and it is the entirety of the record which this Court must examine to determine whether the ALJ's assessment and decision is supported by substantial evidence. "[R]eviewing courts do not demand perfect decisions." *Morgan v. Berryhill*, No. 1:15-cv-00449 (MAT), 2017 WL 6031918, at *5 (W.D.N.Y. Dec. 5, 2017) (quoting *Abdulsalam v. Comm'r of Soc. Sec.*, No. 5:12–cv–1631 (MAD), 2014 WL 420465, at *8 (N.D.N.Y. Feb. 4, 2014) ); *see also Whitaker v. Berryhill*, No. 3:17-cv-1337 (SRU), 2018 WL 4583508, at *13 (D. Conn. Sept. 25, 2018) ("Even in the face of an oversight, the ALJ's decision may be upheld if the error was 'harmless,' that is, if other 'substantial evidence in the record' supports the ALJ's conclusions"); *Rivera v. Berryhill,* No. 3:18-CV-0073 (KAD), 2018 WL 6590565, at *5 (D. Conn. Dec. 14, 2018).

---

[5] It is clear that the ALJ knew this statement was not accurate. The ALJ's first finding was that the Plaintiff had not worked since his car accident in 2010. The record may have been cited to not as proof that the Plaintiff was working, but as evidence that Dr. Hemerle's assessment, at that time, was consistent with his ability to do so.

7

The ALJ also pointed to a treatment note in which the Plaintiff acknowledges going with a friend to his job to "see how it was." The Plaintiff points out that the remainder of the treatment note includes the Plaintiff's additional statement that he had to sit for 2 hours and "it was killing [him]." Again, the note is probative of what the Plaintiff was actually doing, as opposed to his testimony on the subject.[6]

In assessing the Plaintiff's testimony, the ALJ also considered the Plaintiff's treatment history. Significantly, the Plaintiff did not seek any treatment for his lower back or neck for over two years, from January 2012 until May 2014. That he sought no treatment is decidedly inconsistent with his description of completely debilitating pain. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553 (2d Cir. 1983) (The ALJ is "entitled to rely not only on what the record says, but also on what it does not say.")

In 2014, the Plaintiff was further evaluated for complaints of lower back pain by Dr. Bookas. In August 2014, Dr. Bookas noted that the Plaintiff had a "normal gait" despite his complaints of back pain. Following an MRI, the Plaintiff was referred to physical therapy. The therapy record indicates that the Plaintiff tolerated the treatment well and was instructed on a home exercise program with respect to which he "demonstrated understanding." However, the Plaintiff was discharged from physical therapy in September 2014 "secondary to noncompliance" with the treatment plan.

The next indication that the Plaintiff sought any treatment for back or neck pain occurs in June 2015, nine months after his discharge from physical therapy. He was evaluated by Sclafani Chiropractic and complained at that time of back and neck pain. On July 1, 2015, the Plaintiff saw

---

[6] In the alternative, the Plaintiff seeks a remand to allow the ALJ to make additional findings in light of his reliance upon these records. However, the ALJ was not factually incorrect in terms of what the records stated. The Plaintiff's different point of view as to the import of those records does not render the decision subject to remand.

Dr. Kaczanowski, again complaining of significant low back pain and indicating that he was having trouble walking as a result. The Plaintiff returned to Dr. Kaczanowski nine months later in March 2016 and remained in treatment with her through August 2016. Her treatment was targeted at alleviating back and neck pain and her records are generally consistent with the Plaintiff's testimony.

The ALJ also noted that on October 11, 2016,[7] the month before the hearing in this matter, the Plaintiff told his primary care provider that he had failed to follow up with other doctors to whom he had been referred because he was "very busy lately" and he "hasn't had time to make the appointments." This necessarily raises the question: *Busy doing what?* In his testimony a month later, he portrayed himself as all but housebound, dependent on his family for meals and cleaning.

In addition to a sparse treatment record during the relevant time period, the Plaintiff acknowledged grocery shopping with his sister, occasional driving, church attendance twice a week, and regular and frequent visits to his mother's home nearby. In view of this record, the ALJ's determination that the Plaintiff's testimony was not consistent with the whole record is supported by substantial evidence. The Plaintiff had the burden of proving that the intensity, frequency, and limiting effects of his pain rendered him disabled. However, a "lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits." *Barry v. Colvin,* 606 F. App'x 621, 622 (2d Cir. 2015); *see also Talavera*, 697 F.3d at 153.

---

[7] The Plaintiff incorrectly states that this appointment occurred on October 11, 2015.

*Dr. Kaczanowski*

Dr. Kaczanowski submitted a "Medical Opinion Re: The Ability to Do Physical Activities" dated October 10, 2016. Therein, she opined that the Plaintiff can only sit or stand for 10 minutes at a time; that he can sit, stand or walk for less than 2 hours of an 8-hour work day; that he requires a position which allows shifting positions at will from sitting to standing or walking, and that he needs to take unscheduled breaks of undetermined length. She opined that he could lift only 5 pounds and would miss more than two days per month of work as a result of his limitations. Although the Plaintiff testified that he had to keep his legs elevated, Dr. Kaczanowski stated that he does not have this limitation. She also opined, among other things, that the Plaintiff should never bend, twist, crouch, or climb stairs or ladders. She wrote, "[t]his person can only do light duty."

The Plaintiff claims that the ALJ improperly gave little weight to Dr. Kaczanowski's opinion and that her opinion was entitled to controlling weight as an opinion of a treating physician pursuant to the so-called "treating physician rule." This rule generally provides that a treating physician's opinion is given controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §404.1527(c)(2); *see also Poupore v. Astrue,* 566 F.3d 303, 307 (2d Cir. 2009).

As a preliminary matter, the Defendant asserts that Dr. Kaczanowski, as a chiropractor, is not an "acceptable medical source" under the regulations and, therefore, the statement she submitted is not a "medical opinion" for purposes of the "treating physician rule." The Defendant is correct. A chiropractor is not an acceptable medical source under the Act. *See Diaz v. Shalala,* 59 F.3d 307, 313 (2d Cir. 1995); *Brush v. Berryhill,* 294 F.Supp.3d 241, 259 (S.D.N.Y. 2018);

*Eastman v. Barnhart,* 241 F. Supp. 2d 160, 168 (D. Conn. 2003). Thus, Dr. Kaczanowski's statement is not afforded special or controlling weight under the treating physician rule.[8] *See id.* The ALJ was tasked with considering Dr. Kaczanowski's statement as one piece of the whole record and evaluating the statement against that record. In the final analysis, an ALJ must balance and weigh conflicting evidence. *See Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) (deferring to the Commissioner's resolution of conflicting evidence).

The ALJ afforded Dr. Kaczanowski's statement little weight. The ALJ noted that the Plaintiff did not see Dr. Kaczanowski for approximately 6 years, from 2010 until 2016 (with one appointment in July 2015). The statement therefore shed no light on the Plaintiff's level of impairment from November 2012 through March of 2016. In addition, Dr. Kaczanowski's assessed limitations were not consistent with the treatment records from other providers. For example, Dr. Kaczanowski submitted her statement at precisely the same time that the Plaintiff was telling his primary care provider that he had been "very busy lately" and therefore unable to make recommended doctors' appointments. In addition, in January 2012, the Plaintiff reported to Dr. Zimmerman that he had some discomfort but was functioning well. In April 2014, following the spark plug incident, Dr. Zimmerman reported that the Plaintiff had no tenderness in the thoracic or cervical spine, good strength in the upper extremities, intact sensation, and a normal gait. On September 23, 2015, although complaining of back pain, Physician Assistant Tulacro noted that the Plaintiff had a full range of motion (with pain) and a normal gait. On September 8, 2016, while seeing his primary care provider for unrelated issues, he appeared "normal, alert, … in no distress."

---

[8] Even if the treating physician rule is applicable, an ALJ is not required to give controlling weight to medical opinions presented. *See Matta v. Astrue,* 508 F. App'x 53, 56 (2d Cir. 2013) (holding that the ALJ's decision need not directly correspond with any of the opinions of medical sources relied upon and the ALJ is entitled to weigh all of the evidence available to make an RFC finding that is consistent with the record as a whole); *see also Richardson v. Perales,* 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

In short, the same substantial evidence which supports the finding that the Plaintiff's testimony is inconsistent with the record supports the ALJ's determination to afford Dr. Kaczanowski's opinion little weight.

*The RFC*

Having determined that the ALJ properly gave only partial weight to the Plaintiff's testimony regarding the frequency, intensity, and limiting effect of his pain, and properly afforded Dr. Kaczanowski's opinion little weight, the question then is whether the RFC is supported by substantial evidence in the record. The ALJ determined that the Plaintiff could perform light work, subject to certain limitations described above.

On this issue, the ALJ also had the reports of Dr. Golkar and Dr. Ramirez, both of whom reviewed the records in the file and rendered opinions as to whether the Plaintiff was disabled and, if not, what level of work he could perform. Both of these reviews occurred on the state of the record as it was in May and August 2015. As such, neither doctor had the benefit of the 2016 records which were submitted subsequent to their review.

Dr. Golkar and Dr. Rameriz both determined that the Plaintiff was not disabled and could perform "medium work," including occasionally lifting up to 50 pounds and frequently lifting up to 25 pounds. Both opined that the Plaintiff could sit, stand, or walk for up to six hours in each work day. Dr. Golkar and Dr. Ramirez did identify certain limitations regarding, *inter alia*, climbing ramps and stairs, stooping, kneeling, and crouching.

The ALJ gave these opinions only partial weight, finding instead that the Plaintiff, though not disabled, was not able to perform "medium work" and had greater restrictions than those included in the doctors' reports. Ultimately, the ALJ concluded that the Plaintiff was only able to perform "light work" subject to substantially greater limitations.

The record demonstrates that the Plaintiff suffers from back and neck pain and is limited in what he can and cannot do as a result of that pain. The ALJ examined all of the records, medical and otherwise, dating back to 2010, considered the Plaintiff's testimony, and reasonably determined that the Plaintiff can perform light work subject to certain limitations. As a result, the ALJ also concluded that the Plaintiff is not disabled under the Act.

This Court's necessarily deferential review of the decision does not afford a different outcome. *Brault*, 683 F.3d at 448 (the Court can reject an ALJ's findings of fact "only if a reasonable factfinder would have to conclude otherwise."). The ALJ's determination is supported by substantial evidence in the record.

For all of the foregoing reasons, the Plaintiff's motion to reverse or in the alternative to remand this matter is DENIED. The Defendant's motion to affirm is GRANTED.

Judgment shall enter in favor of the Defendant.

**SO ORDERED** at Bridgeport, Connecticut, this 22nd day of January 2019.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE